## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## CLEVELAND DIVISION

| | | |
|---|---|---|
| TOM SPEEDON, | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No: 1:25-cv-966 |
| ASSETCARE, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| COLLECTION MANAGEMENT | ) | |
| COMPANY | ) | |
| | ) | |
| & | ) | |
| | ) | |
| CONSUMER ADJUSTMENT | ) | |
| COMPANY, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC | ) | |
| | ) | |

Defendants.

### COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Tom Speedon, by and through the undersigned counsel, and for his

Complaint against Defendants AssetCare, LLC ("AC"), Collection Management Company ("CM"),

Consumer Adjustment Company, Inc. ("CACI"), Experian Information Solutions, Inc. ("EXP"), and

Equifax Information Services, LLC ("EQ") (and together collectively, "Defendants") for violations

under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and for violations

under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

1

## JURISDICTION

1.      This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d) and 1681(p).

2.      Venue is proper because EXP is headquartered in Cuyahoga County, Ohio, the acts and transactions occurred here, and AC, CM, CACI, EXP, and EQ transact business here.

3.      Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4.      Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5.      Plaintiff resides in the city of Austin, a part of Travis County, Texas 78725.

6.      The acts that occurred giving rise to this complaint occurred while Defendant was headquartered in Ohio, making the Northern District of Ohio a proper venue under 28 U.S. Code § 1391(b)(2).

## STANDING

7.      Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

8.      AC, CM, and CACI's collection activities violated the FDCPA.

9.      Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

10.     Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.);

2

Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

11.     "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" Lane v. Bayview Loan Servicing, LLC, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied her the right to information due to her under the FDCPA."); see also Church v. Accretive Health, Inc., No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

12.     "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." Lane, 2016 WL 3671467 at *4.

## PARTIES

13.     Plaintiff, Tom Speedon (hereafter "Plaintiff"), is a natural person currently residing in Travis County, in the state of Texas.

14.     Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

15.     Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

16.     Defendant AC is a corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 2222 Texoma Parkway, Suite 180, Sherman, TX 75090.

17.     Defendant CM is a corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 661 Anderson Dr, Suite 110, Pittsburgh, PA 15220.

18.     Defendant CACI is a corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 500 NW Plz Dr, Saint Ann, MO 63074.

19.     AC, CM, and CACI are each engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

20.     AC, CM, and CACI regularly collect or attempt to collect defaulted consumer debts due or asserted to be due another, and are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

21.     Defendant EXP is a corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

22.     Defendant EQ is a corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

23.     Defendants AC, CM, and CACI are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

24.     EXP and EQ are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). EXP and EQ regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

a. Public record information;

b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

25.     Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to creditors other than AC, CM, and CACI

26.     On a date better known by AC, AC began to attempt to collect an alleged consumer debt from the Plaintiff.

27.     The alleged debt was said to be owed to Radiology Partners.

28.     That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

29.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

30.     The reporting of the alleged debt is inaccurate in that it is incomplete to the extent of being misleading to Plaintiff.

31.     The reporting of the alleged debt contains inaccurate dispute information.

32.     That AC was reporting the collection account on Plaintiff's credit report with EXP.

33.     That AC was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

34.     AC's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

35.     On or about 9/9/2024, Plaintiff sent dispute letters to AC, CMI, and CACI.

36.     On or about 09/13/2024, Plaintiff sent dispute letters via USPS mail to EXP notifying the account with AC as disputed.

37.     These letters provided notice of the inaccurate reporting to EXP.

38.     Once EXP received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case AC.

39.     EXP received the letters sent by Plaintiff.

40.     EXP transmitted notice of these disputes to AC via an Automated Credit Dispute Verification form ("ACDV").

41.     AC was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

42.     Alternatively, EXP negligently failed to send notice of the disputes to AC after receiving notice of the disputes from Plaintiff.

43.     Alternatively, EXP willfully failed to send notice of the disputes to AC after receiving notice of the disputes from Plaintiff.

44.     After receiving this notice, in any subsequent voluntary reporting, AC must then include the dispute notation on said account.

45.     On or about v, Plaintiff received an updated credit file from EXP.

46.     That the credit report was updated on 11/25/24 by AC.

47.     That the updated 11/25/24 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to AC.

48.     Alternatively, that the updated 11/25/24 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify AC.

49.     EXP failed to properly reinvestigate Plaintiff's dispute.

50.     As a result of EXP's failure to reinvestigate, the updated 11/25/24 credit report contained inaccurate information.

51. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

52. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

53. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

54. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

55. That the updated 11/25/24 credit report did not contain updated marked as disputed information.

56. The updated 11/25/24 credit report contained inaccurate information.

57. AC failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

58. EXP failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

59. AC must have voluntarily updated the Plaintiff's alleged account by communicating with EXP.

60. That AC furnished information to EXP regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP of the disputes.

61. That AC failed to update the account information and mark the account as disputed on the updated 11/25/24 credit report after Plaintiff disputed the account on 09/13/2024 and was given notice of such by EXP.

62. In the alternative, if AC properly updated the account information and marked the account as disputed with EXP after receiving notification of disputes from Plaintiff, then EXP failed to update the account information and mark the account as disputed on the updated 11/25/24 credit report.

63.     That AC never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP.

64.     Alternatively, EXP never updated the account information and marked the account as disputed even after receiving information of the dispute remark from AC in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

65.     On a date better known by CM, CM began to attempt to collect an alleged consumer debt from the Plaintiff.

66.     The alleged debt was said to be owed to Third Coast Emergency Physicians Southwest PA.

67.     That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

68.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

69.     The reporting of the alleged debt is inaccurate in that it is incomplete to the extent of being misleading to Plaintiff.

70.     The reporting of the alleged debt contains inaccurate dispute information.

71.     That CM was reporting the collection account on Plaintiff's credit report with EXP and EQ.

72.     That CM was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

73.     CM's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

74.     On or about 09/13/2024, Plaintiff sent dispute letters via USPS mail to EXP and EQ notifying the account with CM as disputed.

75. These letters provided notice of the inaccurate reporting to EXP and EQ.

76. Once EXP and EQ received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case CM.

77. EXP and EQ received the letters sent by Plaintiff.

78. EXP and EQ transmitted notice of these disputes to CM via an Automated Credit Dispute Verification form ("ACDV").

79. CM was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

80. Alternatively, EXP and EQ negligently failed to send notice of the disputes to CM after receiving notice of the disputes from Plaintiff.

81. Alternatively, EXP and EQ willfully failed to send notice of the disputes to CM after receiving notice of the disputes from Plaintiff.

82. After receiving this notice, in any subsequent voluntary reporting, CM must then include the dispute notation on said account.

83. On or about 10/07/24, Plaintiff received an updated credit file from EXP.

84. That the credit report was updated on 11/4/204 by CM.

85. That the updated 10/07/24 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to CM.

86. Alternatively, that the updated 10/07/24 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify CM.

87. EXP failed to properly reinvestigate Plaintiff's dispute.

88. As a result of EXP's failure to reinvestigate, the updated 10/07/24 credit report contained inaccurate information.

89.     EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

90.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

91.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

92.     The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

93.     On or about 11/04/24, Plaintiff received an updated credit file from EQ.

94.     That the credit report was updated on 10/7/24/24 by CM.

95.     That the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to CM.

96.     Alternatively, that the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify CM.

97.     EQ failed to properly reinvestigate Plaintiff's dispute.

98.     As a result of EQ's failure to reinvestigate, the updated credit report contained inaccurate information.

99.     EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

100.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

101.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

102.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

103.    That the updated 10/07/24 and 11/04/24 credit report did not contain updated marked as disputed information.

104. The updated 10/07/24 and 11/04/24 credit report contained inaccurate information.

105. CM failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

106. EXP and EQ failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

107. CM must have voluntarily updated the Plaintiff's alleged account by communicating with EXP and EQ.

108. That CM furnished information to EXP and EQ regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP and EQ of the disputes.

109. That CM failed to update the account information and mark the account as disputed on the updated 10/07/24 and 11/04/24 credit report after Plaintiff disputed the account on 09/13/2024 and was given notice of such by EXP and EQ.

110. In the alternative, if CM properly updated the account information and marked the account as disputed with EXP and EQ after receiving notification of disputes from Plaintiff, then EXP and EQ failed to update the account information and mark the account as disputed on the updated 10/07/24 and 11/04/24 credit report.

111. That CM never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP and EQ.

112. Alternatively, EXP and EQ never updated the account information and marked the account as disputed even after receiving information of the dispute remark from CM in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

113. On a date better known by CACI, CACI began to attempt to collect an alleged consumer debt from the Plaintiff.

114.    The alleged debt was said to be owed to Longhorn Emergency Medical Associates PA.

115.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

116.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

117.    The reporting of the alleged debt is inaccurate in that it is incomplete to the extent of being misleading to Plaintiff.

118.    The reporting of the alleged debt contains inaccurate dispute information.

119.    That CACI was reporting the collection account on Plaintiff's credit report with EXP and EQ.

120.    That CACI was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

121.    CACI's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

122.    On or about 09/13/2024, Plaintiff sent dispute letters via USPS mail to EXP and EQ notifying the account with CACI as disputed.

123.    These letters provided notice of the inaccurate reporting to EXP and EQ.

124.    Once EXP and EQ received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case CACI.

125.    EXP and EQ received the letters sent by Plaintiff.

126.    EXP and EQ transmitted notice of these disputes to CACI via an Automated Credit Dispute Verification form ("ACDV").

127.    CACI was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

128.     Alternatively, EXP and EQ negligently failed to send notice of the disputes to CACI after receiving notice of the disputes from Plaintiff.

129.     Alternatively, EXP and EQ willfully failed to send notice of the disputes to CACI after receiving notice of the disputes from Plaintiff.

130.     After receiving this notice, in any subsequent voluntary reporting, CACI must then include the dispute notation on said account.

131.     On or about 11/24/24, Plaintiff received an updated credit file from EXP.

132.     That the credit report was updated on 11/24/24 by CACI.

133.     That the updated 11/24/24 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to CACI.

134.     Alternatively, that the updated 11/24/24 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify CACI.

135.     EXP failed to properly reinvestigate Plaintiff's dispute.

136.     As a result of EXP's failure to reinvestigate, the updated 11/24/24 credit report contained inaccurate information.

137.     EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

138.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

139.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

140.     The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

141.     On or about 11/17/24, Plaintiff received an updated credit file from EQ.

142.     That the credit report was updated on 11/17/24 by CACI.

143. That the updated 11/17/24 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to CACI.

144. Alternatively, that the updated 11/17/24 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify CACI.

145. EQ failed to properly reinvestigate Plaintiff's dispute.

146. As a result of EQ's failure to reinvestigate, the updated 11/17/24 credit report contained inaccurate information.

147. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

148. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

149. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

150. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

151. That the updated 11/17/24 and 11/24/24 credit report did not contain updated marked as disputed information.

152. The updated 11/17/24 and 11/24/24 credit report contained inaccurate information.

153. CACI failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

154. EXP and EQ failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

155. CACI must have voluntarily updated the Plaintiff's alleged account by communicating with EXP and EQ.

156. That CACI furnished information to EXP and EQ regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP and EQ of the disputes.

157. That CACI failed to update the account information and mark the account as disputed on the updated 11/17/24 and 11/24/24 credit report after Plaintiff disputed the account on 09/13/2024 and was given notice of such by EXP and EQ.

158. In the alternative, if CACI properly updated the account information and marked the account as disputed with EXP and EQ after receiving notification of disputes from Plaintiff, then EXP and EQ failed to update the account information and mark the account as disputed on the updated 11/17/24 and 11/24/24 credit report.

159. That CACI never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP and EQ.

160. Alternatively, EXP and EQ never updated the account information and marked the account as disputed even after receiving information of the dispute remark from CACI in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

161. All of AC, CM, and CACI's actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

162. All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

163. Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the AC, CM, and CACI and/or EXP and EQ.

164. Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by AC, CM, and CACI, and/or EXP and EQ.

165.    Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by AC, CM, and CACI, and/or EXP and EQ.

166.    Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

167.    Plaintiff's injury-in-fact is fairly traceable to the challenged representations of AC, CM, and CACI, and/or EXP and EQ.

168.    Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

## Count I: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions

169.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

170.    Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

171.    That because Plaintiff disputed the debt, AC, CM, and CACI, when choosing to contact the consumer reporting agencies, were obligated to inform them of the disputed status of the accounts. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative

duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

172.    AC, CM, and CACI used deceptive and misleading tactics when they communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debts were disputed in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

173.    AC, CM, and CACI's collection communications are to be interpreted under the "least sophisticated consumer" standard. See, Goswami v. Am. Collections Enter., Inc., 377 F.3d 488, 495 (5th Cir. 2004); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir.1997) (When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also, Goswami, 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

174.    AC, CM, and CACI violated the Plaintiff's right not to be the target of misleading debt collection communications.

175.    AC, CM, and CACI violated the Plaintiff's right to a truthful and fair debt collection process.

176.    AC, CM, and CACI's communications with Plaintiff were deceptive and misleading.

177.    AC, CM, and CACI used unfair and unconscionable means to attempt to collect the alleged debt.

178.     AC, CM, and CACI's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to AC, CM, and CACI's collection efforts.

179.     AC, CM, and CACI's failure to mark debts as disputed they know or should know are disputed violates § 1692e, 1692e(8) of the FDCPA.

180.     AC, CM, and CACI's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding his situation.

181.     Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

182.     Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of AC, CM, and CACI's conduct.

183.     The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. AC, CM, and CACI's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

184.     Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, fear, stress, mental anguish, emotional stress, and acute embarrassment.

185.     Defendants AC, CM, and CACI's violation of § 1692e of the FDCPA renders them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Tom Speedon, prays that this Court:

      A.     Declare that AC, CM, and CACI's debt collection actions violate the FDCPA;

      B.     Enter judgment in favor of Plaintiff Tom Speedon, and against AC, CM, and CACI, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

      C.     Grant other such further relief as deemed just and proper.

**Count II: Violations Of § 1692d Of The FDCPA – Harassment or Abuse**

186.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

187.    Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

188.    AC, CM, and CACI's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

189.    AC, CM, and CACI attempted to coerce Plaintiff into paying alleged debts his otherwise would not have paid by submitting false and inaccurate information to his credit report.

190.    AC, CM, and CACI could have no other purpose in doing this except to harm Plaintiff's reputation and deprive him of his ability to receive any type of credit line unless he paid the alleged debts.

191.    Defendants AC, CM, and CACI's violation of § 1692d of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Tom Speedon, prays that this Court:

      A.      Declare that AC, CM, and CACI's debt collection actions violate the FDCPA;

      B.      Enter judgment in favor of Plaintiff Tom Speedon, and against AC, CM, and CACI, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

      C.      Grant other such further relief as deemed just and proper.

## COUNT III: Violations Of § 1692f Of The FDCPA – Misleading Representations & Unfair Practices

192.      Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

193.      Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

194.      AC, CM, and CACI attempted to collect debts by distributing false information that would negatively impact Plaintiff's rights as a consumer, as well as that would harm Plaintiff's financial health.

195.      AC, CM, and CACI used unfair and unconscionable means to attempt to collect the alleged debts.

196.      AC, CM, and CACI's violation of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Tom Speedon, prays that this Court:

      A.      Declare that AC, CM, and CACI's debt collection actions violate the FDCPA;

      B.      Enter judgment in favor of Plaintiff Tom Speedon, and against AC, CM, and CACI, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

      C.      Grant other such further relief as deemed just and proper.

**Count IV: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information**

197.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

198.     Plaintiff's credit report contained inaccurate information as it did not include a dispute notation even after Plaintiff disputed the accounts directly with EXP and EQ.

199.     EXP and EQ failed to follow reasonable procedures to keep Plaintiff's credit file accurate by including incomplete information on Plaintiff's credit file; EXP and EQ failed to send notice of the disputes received from Plaintiff to the furnishers as required, and EXP and EQ failed to update Plaintiff's credit file to ensure accuracy; EXP and EQ violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

200.     As a result of this conduct, action and inaction of EXP and EQ, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

201.     EXP and EQ's conduct, action, and inaction were willful, rendering them liable for statutory damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

202.     Due to EXP and EQ's conduct, Plaintiff is entitled to recovery costs and attorney's fees from EXP and EQ in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Tom Speedon, prays that this Court:

A.     Declare that EXP and EQ's credit reporting actions violate the FCRA;

B.    For EXP and EQ's willful violations, enter judgment in favor of Plaintiff Tom Speedon, and against EXP and EQ, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    For EXP and EQ's negligent violations, enter judgment in favor of Plaintiff Tom Speedon, and against EXP and EQ, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

D.    Or, in the alternative, enter judgment in favor of Plaintiff Tom Speedon, and against EXP and EQ, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

E.    Grant other such further relief as deemed just and proper.

### Count V: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information

203.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

204.    EXP and EQ were reporting inaccurate and incomplete information on Plaintiff's credit report.

205.    EXP and EQ's inaccurate and incomplete reporting of Plaintiff's credit file is misleading to the extent that it can adversely impact Plaintiff's credit decisions.

206.    Plaintiff disputed the accuracy of his credit report directly with EXP and EQ via dispute letters sent through USPS.

207.    Defendants EXP and EQ violated 15 U.S.C. § 1681 after failing to conduct lawful reinvestigations of Plaintiff's disputes and provide the furnishers with notice of Plaintiff's dispute.

208.    EXP and EQ failed to report the status of the disputed accounts as disputed or delete the inaccuracy from Plaintiff's credit report after receiving notice of the disputes directly from Plaintiff.

209. Defendants EXP and EQ willfully or negligently violated 15 U.S.C. § 1681i by failing to forward all relevant information to AC, CM, and CACI; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source they have reason to know is unreliable; and by publishing inaccurate information.

210. As a result of this conduct, action and inaction of EXP and EQ, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

211. EXP and EQ's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

212. The Plaintiff is entitled to recovery costs and attorney's fees from EXP and EQ in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Tom Speedon prays that this Court:

    A.    Declare that EXP and EQ's credit reporting actions violate the FCRA;

    B.    Enter judgment in favor of Plaintiff Tom Speedon, and against EXP and EQ, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

    C.    Or, in the alternative, enter judgment in favor of Plaintiff Tom Speedon, and against EXP and EQ, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

    D.    Grant other such further relief as deemed just and proper.

## Count VI: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

213.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

214.     Defendants AC, CM, and CACI violated 15 U.S.C. § 1681s-2(b) by continuing to report the AC, CM, and CACI representations within Plaintiff's credit file with EXP and EQ without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the AC, CM, and CACI representations; by failing to review all relevant information regarding same; by failing to accurately respond to AC, CM, and CACI; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the AC, CM, and CACI representations to the consumer reporting agencies.

215.     As a result of this conduct, action, and inaction of AC, CM, and CACI, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

216.     Defendants AC, CM, and CACI's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

217.     Plaintiff is entitled to recover costs and attorney's fees from AC, CM, and CACI in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Tom Speedon, prays that this Court:

A.     Declare that AC, CM, and CACI's credit reporting actions violate the FCRA;

B.     Enter judgment in favor of Plaintiff Tom Speedon, and against AC, CM, and CACI, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.     Or, in the alternative, enter judgment in favor of Plaintiff Tom Speedon, and against AC, CM, and CACI, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.     Grant other such further relief as deemed just and proper.

## JURY DEMAND

218.    Plaintiff demands a trial by jury on all Counts so triable.

Dated: May 13, 2025

Respectfully Submitted,

**HALVORSEN KLOTE DAVIS**

By:     /s/ Joel S. Halvorsen

Joel S. Halvorsen, #67032
Seid Music #76713
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hkdlawstl.com
seid@hkdlawstl.com
*Attorneys for Plaintiff*